W. T. PATTERSON *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Provocation. Instructions.*

In a trial for murder it is error to charge the jury that if the accused invited or provoked the danger to which he was subjected by his adversary, he may not show that at the time of the killing he was acting in self-defense.

2. SAME. *Hypothetical case.*

Where there is no evidence of provocation on the part of one accused of murder, it is error to instruct the jury hypothetically, as if the element of provocation might be found in the testimony.

3. SAME. *Case.*

The facts that one accused of murder came out of his house with his gun, and, halting the deceased, with whom he was upon unfriendly terms, inquired why he was on his premises, are consistent with a lawful purpose and should not be treated in instructions to the jury as constituting *per se* provocation for the homicide.

FROM the circuit court of Simpson county.

HON. A. G: MAYERS, Judge.

The opinion sufficiently states the nature of the evidence. The instructions referred to therein are as follows:

" 3. The law will not permit a man to defend his life from a danger he has himself unlawfully provoked or invited; and to purposely kill in defense of life from a danger he has so invited or provoked, is murder, and not manslaughter.

" 4. This killing of Brinson by Patterson, for which you are now trying Patterson, if excused or justified by the law at all, is solely justified or excused on the ground of self-defense, and it certainly is not excused or justified on that ground, if you shall believe from the evidence, beyond all reasonable doubt, that, with hatred toward Brinson and the purpose to kill him in his heart, Patterson, with his loaded gun, went out and halted him, and there raised a row with him, or began the difficulty in which he killed him, it is your duty under your oath to convict him of murder.

" 5. If you believe from the evidence, beyond all reasonable doubt, that Patterson was mad with Brinson, and had formed the purpose of killing him, and that, on seeing Brinson, with that purpose still harbored in his heart, he went out to him with his loaded shotgun, and there provoked a difficulty, or was the aggressor in a difficulty, in which he shot and killed him in pursuance of such purpose, such killing was without any sort of excuse or justification whatever, in law, and was murder, and you should say so by your verdict, even though you should believe that his killing Brinson was necessary to save his own life, and that Brinson was riding on a private road through Patterson's place.

" 7. Even if you believe from the evidence that Brinson rode his mule through Patterson's inclosure after being ordered not to do so, still, if you further believe from the evidence, beyond all reasonable doubt, that Patterson had formed the purpose to kill Brinson, and when he saw him there he went out with the

purpose to raise a row with him, in order to get a chance to kill him, and not for the purpose of putting him off of his land as a trespasser, and that he did go out with his loaded gun in pursuance of his purpose to kill him, and provoked the difficulty in which he killed Brinson, then Patterson is guilty of murder, and you should so find even though you should believe that such killing was done to save his own life."

*Robert Lowry*, for the appellant.

The court below erred in granting the third, fourth, fifth, and seventh instructions for the state. There was no evidence of provocation on the part of the accused, and there was evidence tending to show that the difficulty was precipitated by the conduct of the deceased. With these facts in view, it would be idle to cite authority against the instructions above mentioned.

*Wiley N. Nash*, attorney-general, for the state.

The reporter finds no brief of the attorney-general in the record.

*R. N. Miller* and *J. L. McCaskill*, on the same side.

The third charge for the state is a correct statement of the rule of law, as old as the law itself, that " no man can invoke the doctrine of self-defense from a danger that he has himself unlawfully provoked or invited," etc. It will be noted that the word " unlawfully " in this instruction means and stands for the other element, to wit, that the man arms himself with a deadly weapon, which he intends to use in overcoming his adversary, and that he intentionally provokes or invites the danger, intending at the outset to kill. These elements, it will be seen, are implied in the word " unlawfully," and we repeat that the third instruction, in stating the abstract proposition of law, states it correctly, and as it will be found stated in nearly all the elementary authors on the subject, and is almost precisely in the language of this honorable court in the case of *Allen* v. *State*,

66 Miss., 385, where the rule is broadly stated, thus: "Having invited the danger in which he stood, it was murder to kill his adversary, even if his own life was in peril." In trying criminal cases it is elementary practice, in stating the law to the jury, to give definitions in general terms, as, for instance, in defining murder, manslaughter, and then to state those general rules in detail when it comes to presenting the facts hypothetically. It is, we affirm, an elementary proposition of practice, which has been approved from the earliest history of this court down to the present time, that all the instructions on the same subject must be considered together, if they are not in conflict with each other, and if, as a whole, they announce the law correctly, none of them are held to be reversible errors. See Thompson on Trials, sec. 2407; *Lipscomb* v. *State, ante,* p. 559.

The fourth and fifth charges, in undertaking to state the same propositions of law contained in the third, and which are admitted by the court to state the law correctly, must be construed and taken with the third. They are not in conflict with the third in any manner. They state the rules of law correctly, and they explain what is meant by the word "unlawfully" provoking or inviting a danger, as used in the third charge, and they apply the abstract rule of law announced in the third to the facts of this case.

The fourth charge simply stated the undisputed fact that the only defense suggested or hinted by the record for Mr. Patterson was self-defense, and then proceeded to say that he was not justified on that ground, "if you shall believe, from the evidence, beyond all reasonable doubt, that, with hatred toward Brinson and a purpose to kill him in his heart, Patterson, with his loaded gun, went out and halted him, and there raised a row with him, or began the difficulty in which he killed him, it is your duty to convict him of murder."

The fifth instruction is just like the fourth, and we need not quote it. It cannot be denied that this charge states the law correctly—that hatred in his heart and a purpose to kill make

the essential elements of malice, which fix the character of the crime as murder. Again, it cannot be denied that, if he went out with his loaded gun and the purpose to kill, and he began the difficulty, that all the essential elements are there to cut him off from the right of self-defense. See *Prine* v. *State*, 73 Miss., 838; *Cotton* v. *State*, 31 Miss., 504; *Helm* v. *State*, 67 Miss., 562; *Allen* v. *State*, 66 Miss., 385.

If these two charges, the fourth and the fifth, taken with the third, all together announce the law correctly, then the giving of the third instruction was not error.

The fourth, fifth, and seventh charges were not erroneous because founded alone upon inferential testimony. The effect of so holding is to say that in no case does the law permit the prosecution to state hypothetically to a jury any inferences of fact which are in conflict with the direct testimony for the defense, however false and perjured that testimony may appear to be. This doctrine would be so destructive of all the rules devised for the safety of society that it would shock the moral conscience and sense of right even of the laity of the state. Ninety-nine per cent., it is safe to say, of all the testimony delivered in courts of justice is what the law calls ''presumptive evidence,'' or inferential testimony. Wharton, in his work on Criminal Evidence, ch. 1, says that there is no such thing as positive testimony when reduced to its last analysis, and that all evidence is bound up more or less with inferences. He illustrates by saying: ''You see a man aim a gun and fire it at another, who falls dead with a bullet wound in his heart, and at last it is but an inference of fact that the bullet from the particular gun killed him.'' No sane man doubts the admissibility, force, and value of inferential or presumptive proof. Its cogency is for the jury, but the rule is well settled that either party to a contest may always state hypothetically any phase of his case which there is any evidence tending to support. See Thompson on Trials, sec. 2317. Its probative force is for the jury. The only question for the court to decide in granting the

charge is, is there any testimony tending to support the theory hypothecated? "It is not necessary for the court to be satisfied that the evidence sustains the theory hypothecated." See last citation. There was certainly some evidence tending to support the state's theory.

Argued orally by *Robert Lowry*, for appellant.

WHITFIELD, J., delivered the opinion of the court.

The third instruction for the state is fatally erroneous. It practically amounted to an instruction by the court, as matter of law, that the defendant was estopped to set up self-defense. It is too narrow altogether. It is not true that the right of self-defense can never arise, at any stage of a difficulty, when one is defending himself against dangers of any kind that he may have unlawfully provoked. The fourth, fifth, and seventh charges are all erroneous, because there is no evidence that Patterson did provoke the difficulty, except the mere testimony that he went out with his loaded shotgun, and halted Brinson, and asked him what he meant by coming through his premises after writing him the insults he had written him. All that Patterson did might consist with a lawful purpose. He certainly had the right to inquire Brinson's purpose, and the right to carry his gun for self-defense, if attacked. If he had threatened Brinson's life, and determined to kill him, and, seeing him, went out with his loaded gun for the sole purpose of bringing on a difficulty, in order to get an opportunity to kill him, taking his gun for that purpose, and intending to use it, if necessary, to kill Brinson, of course, he would be guilty of murder. But there must be proof of these facts, before a charge can, in the concrete, be predicated of them. And there is no proof of any attack by Patterson, save as indicated. According to Shade Durr and Lucinda Durr, Brinson drew his pistol, over the protests of Patterson. Their testimony may be a pure fabrication. But that is for the jury. The charges go too far.

We have, over and over, said that in drawing instructions for the state, the old paths are the safe paths. Prisoners at their country's bar are not to be charged into the penitentiary by the court as matter of law, but to be put there by the verdict of juries finding their guilt as a fact. Will the representatives of the state heed us once more, solemnly and earnestly adjuring them to ask few, very few, instructions of the plainest and most conservative character, and trust the result—merely trust it—to the common sense and sound judgment of the jury?

*Judgment reversed, verdict set aside and cause remanded.*